UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 2:19-CR-00286-01** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **JARVIS PIERRE** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a Motion to Suppress filed by defendant Jarvis Pierre ("Pierre"). Doc. 37. Pierre seeks to suppress physical evidence obtained by a search of his vehicle and person resulting in two separate arrests. *Id.* An evidentiary hearing was held and the government produced testimony from both arresting officers of each arrest. The government also introduced video footage from the dash camera of both arresting officers and the body camera from one of the arrests.

For the reasons stated it is **RECOMMENDED** that the motion be **DENIED**.

### I.
#### BACKGROUND

Pierre was indicted by a grand jury and charged with two counts of possession of a firearm by a convicted felon, a violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and simple possession of a controlled substance, a violation of 21 U.S.C. § 844(a). Doc. 1, pp. 1–2. The charges arose from two traffic stops that occurred, respectively, on October 7, 2018, and December 27, 2018. Pierre argues that the traffic stops were conducted in violation of his Fourth Amendment guarantee against unreasonable search and seizure and moves to suppress the contraband evidence. Doc. 37. The government opposes the motion, arguing that both stops were initially valid and were validly continued

based on reasonable suspicions of illegal activity. Doc. 41. It also asserts that Pierre consented to the December 27, 2017, search. *Id.*

### A. October 7, 2018

Sergeant Jeremy Wolford of the Calcasieu Parish Sheriff's Office testified that he responded to a report of gunshots at the Cloud 9 Night Club in Lake Charles around 5:00 am on October 7, 2018. He arrived in an unmarked vehicle and observed a red Corvette in the parking lot, parked away from other cars and with its brake lights on. Wolford also noticed that the driver of the Corvette, later identified as Pierre, kept his head down while marked police vehicles began to leave, without locating a suspect or firearm, and that Pierre remained behind until they had left. Wolford decided to continue observing him on suspicion that he had been involved in the illegal activity reported at the night club. Wolford followed Pierre as he left the night club and traveled down Highway 90. He saw Pierre drift, with his driver's side wheels touching the yellow lane line and his passenger wheels then touching the white lane line. He then activated his emergency lights and pulled Pierre over for failing to maintain his lane.

Wolford testified that, upon approaching Pierre, he detected a strong odor of marijuana emanating from the red Corvette. He requested Pierre's documentation and returned to his patrol car to run computer checks. He also requested backup. Upon returning to the Corvette, he noticed that a compartment behind the radio screen had been opened between his first and second approaches to the vehicle. He also again detected a smell of marijuana and asked Pierre to step out of the car. Pierre became visibly agitated and stated the he did not see what he had done wrong. Wolford advised that he had witnessed Pierre drift off the roadway. Wolford then had Pierre step outside the vehicle and conducted an exterior clothing pat-down, which turned up no contraband. Backup arrived and Wolford asked his fellow officer, Corporal Gaspard, to smell the car. Gaspard said that he also detected a strong

odor of marijuana. Wolford searched the car and located marijuana inside the vehicle. He then placed Pierre under arrest. On a search incident to the arrest, Wolford found a mixture of heroin and fentanyl wrapped in a dollar bill on Pierre's person. When searching the vehicle, officers also discovered other contraband including a loaded handgun. Doc. 41, pp. 4–5.

### B. December 27, 2018

On December 27, 2018, Officer Rodney Daigle of the Calcasieu Parish Sheriff's Office was on patrol in Sulphur, Louisiana. As he was merging onto the interstate, he noticed a gray Camaro traveling halfway in its lane and halfway in the shoulder. He activated his lights and pulled over the vehicle, which was being driven by Pierre. Pierre admitted that there was marijuana in the car. Daigle asked for consent to search the car and Pierre granted it. In this search Daigle located a gun stuffed between the seat and the center console.

### C. Motion to Suppress

The defense initially argues that Pierre did not commit a traffic violation and if he did, Wolford unreasonably extended the traffic stop and therefore all evidence from that stop should be suppressed. Doc. 37, att. 2, p. 2. Additionally, in his reply, the defendant argued that Wolford did not have a constitutional basis to perform a pat-down of Pierre's person or have probable cause to arrest Pierre prior to the vehicle search. Doc. 43, p. 2. In his post-hearing brief, the defense further asserts that Wolford's pursuit is what caused Pierre's erratic driving, that his minimal traffic infraction did not give cause for the stop, and that the odor of marijuana was not proven. Doc. 57, pp. 4–5. Adversely, the government argues that Wolford conducted a lawful traffic stop and the extension of the stop was constitutional. Doc. 41, p. 1. The government reasserts this position in its post-hearing brief by expressing that there should be no suppression of any evidence because Pierre's Fourth Amendment rights were not violated. Doc. 58, p. 1.

## II.
### LAW AND ANALYSIS

Generally, the proponent of a motion to suppress bears the burden of proving by a preponderance of the evidence that the evidence in question was obtained in violation of his or her Fourth Amendment rights. *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014). Where, as here, the search is conducted without the benefit of a warrant then the burden shifts to the Government to prove by a preponderance of the evidence that its actions were constitutional. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

The Fourth Amendment's protection of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" includes "vehicle stops and temporary detainment of a vehicle's occupants." U.S. CONST. amend. IV; *United States. v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). The Fourth Amendment is silent as to the ramification for an unlawful search or seizure but the jurisprudentially created "exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.' " *United States v. Singh,* 261 F.3d 530, 535 (5th Cir. 2001), citing *United States v Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000).

The constitutionality of a traffic stop is analyzed under the two-part framework promulgated by the Supreme Court in *Terry v. Ohio.* 88 S.Ct. 1868 (1968). The *Terry* test requires courts to "determine whether the stop was justified at its inception," and, if so, "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Andres*, 703 F.3d at 832 (quoting *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011)). An analysis of a traffic stop under *Terry* also mandates that "courts ... allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained

person." *United States v. Brigham,* 382 F.3d 500, 507 (5th Cir. 2004) (internal quotations omitted). Further, under the "collective knowledge" doctrine, officers can rely on information from other law enforcement agencies or personnel even if the officer does not have personal knowledge of the evidence creating a reasonable suspicion of the activity reported from the other agency. *United States v. Hensley*, 105 S.Ct. 675, 682 (1985).

The initial inquiry under *Terry* is satisfied if the officer has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). In addition, "[s]o long as a traffic law infraction that would have objectively justified the stop ha[s] taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment...." *Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir. 1997).

The second portion of the *Terry* framework requires the "detention ... be temporary and last no longer than is necessary to effectuate the purposes of the stop." *Brigham*, 382 F.3d at 507. During the stop, "a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen." *Lopez-Moreno*, 420 F.3d at 430. Such inquiry "may be wide-ranging." *Id.* at 431. Officers "may also ask about the purpose and itinerary of a driver's trip during the traffic stop." *Brigham*, 382 F.3d at 508 (citing *U.S. v. Gonzales*, 382 F.3d 755, 758-59 (5th Cir. 2003)). However, "once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention." *Lopez-Moreno*, 420 F.3d at 431. The stop may continue if "the Government can show an exception to the Fourth Amendment." *United States v. Peña-Gonzales*, 618 Fed. App'x 195, 198 (5th Cir. 2015)

(quoting *Rodriguez v. United States,* 135 S.Ct. 1609, 1614 (2015)) (quotations and alterations omitted). A common exception derived from *Terry* permits extension of the stop if reasonable suspicion of additional criminal activity emerges or existed in the first place. *Id.*

Reasonable suspicion requires an amount of proof "considerably less than proof of wrongdoing by a preponderance of the evidence" and "obviously less than is necessary for probable cause." *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014) (quotations omitted). If additional grounds for suspicion emerge after the initial stop, the stop may extend "as long as is reasonably necessary" to resolve such suspicion. *United States v. Fishel*, 467 F.3d 855, 856 (5th Cir. 2006) (quoting *Brigham*, 382 F.3d at 512). A court's determination of the existence of reasonable suspicion requires an examination of "the totality of the circumstances in the situation at hand, in light of the individual officers' own training and experience." *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (internal quotations omitted).

Restated simply, a traffic stop is not an unconstitutional seizure of the person if the officer has a reasonable suspicion that illegal activity, such as a traffic violation, has occurred. Once the officer has concluded the business related to the initial constitutional stop, he may thereafter continue to hold the accused if he has reasonable suspicion that other criminal activity is afoot and may continue that hold the suspect until the officer is satisfied that the criminality is or is not occurring. The continued hold is likewise not unconstitutional seizure of the person.

### A. October 7, 2018

Pierre argues that this stop fails *Terry*'s first prong because no traffic violation occurred and that if one did, it is because the driving of the officer caused him to drift within his lane. Pierre relies on *State v. Vaughn*, to support his claim that a minor infraction does not establish probable cause to stop. Doc. 37, att. 2, p. 6, quoting *State v. Vaughn*, 488 So.2d 915 (La. App. 3d Cir. 1984); however,

in *State v. McLeondon*, the court stated, "we find that *Vaughn* is an outlier in an array of Louisiana case law whose precedent expressly advances the opposite outcome." 185 So.3d at 306. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred." *Whren v. United States*, 116 S.Ct. 1769, 1772 (1996). Here Pierre does not dispute that Louisiana law requires a driver to drive "as nearly as practicable" within his lane. La. Rev. Stat. § 32:79. Both Sergeant Wolford's testimony and dash camera footage support the offered justification for the stop: that Pierre appeared to be violating this rule with his vehicle drifting left and right, to the extent that his tires would touch the lane markers on either side. *See, e.g., United States v. Jerry,* 2019 WL 3228847 (W.D. La. Jun. 18, 2019) (denying suppression on a traffic stop based on improper lane usage, after the officer had observed similar weaving within a lane). The defense's arguments to the contrary are not credible, and *Terry*'s first prong is clearly met.

Pierre also argues that Wolford illegally extended the stop. Wolford's testimony and the surrounding circumstances, however, clearly provide grounds for reasonable suspicion of criminal activity. Wolford testified that he twice smelled marijuana coming from the vehicle and had another officer confirm the odor.[1] He had also pursued Pierre after witnessing him behaving suspiciously in the parking lot of a club where criminal activity had just been reported. Finally, Wolford observed that compartments were being opened in Pierre's car between his approaches to the vehicle, pointing to an attempt to hide contraband in Wolford's experience. Accordingly, *Terry*'s second prong is also satisfied. Neither the stop nor its extension amounts to a violation of the Fourth Amendment.

Pierre argued in the reply supporting his original motion that the pat-down and arrest were not justified. Doc. 43. He did not address these claims in his post-hearing brief. To the extent that the

---

[1] Pierre disputes this finding and argues that the search of the car yielded only a very small amount of unburnt marijuana and no burnt marijuana. These facts do not exclude the possibility that marijuana was recently smoked in the car. The odor, coupled with Pierre's suspicious behavior during the traffic stop and in the parking lot of the Cloud 9 night club, provided more than adequate justification to extend the stop.

-7-

arguments have not been abandoned, the court observes that a pat-down is justified during a traffic stop where the officer harbors reasonable suspicion that the person subjected to the frisk is armed and dangerous. *Arizona v. Johnson*, 129 S.Ct. 781, 784 (2009). Given all of the circumstances described above, and in particular the fact that Wolford had followed Pierre from the scene of a venue where suspicious activity with a firearm had been reported, there was adequate justification for the pat-down. Additionally, Pierre complains that he was placed in handcuffs after the pat-down "because [he] was on his cellphone talking to his mother." Doc. 43, p. 3. The government argues, and the dash camera footage supports, that Pierre was not formally taken into custody until after his vehicle search. "The police may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect." *United States v. Abdo*, 733 F. 3d 562, 565 (5th Cir. 2013). Given the surrounding circumstances, Pierre's agitated behavior, the odor of marijuana emanating from Pierre's vehicle, and that fact that no firearm was found at the venue Pierre had recently left, detaining Pierre while Wolford conducted the search of the vehicle was reasonable to ensure the safety of the officer.

    **B.  December 27, 2018**

Pierre voluntarily admitted to having marijuana in his vehicle and gave consent for Officer Daigle to search his person and vehicle. The consent exception to the warrant requirement requires "that the consent was given voluntarily" and "that either the defendant himself consented to the search or that consent was obtained from a third party that had the ability to furnish valid consent." *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). The defense does not contest that Pierre voluntarily gave consent for the officer to search his vehicle. No violation of the Fourth Amendment occurred during this arrest; therefore, the government met their burden and there is no basis to exclude any evidence from this arrest.

## III.
### CONCLUSION

For the reasons given we **RECOMMEND** the Motion to Suppress [doc. 37] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 17th day of July, 2020.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE